IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

ERIC WILLIAMS, ET AL.                                                                    PLAINTIFFS

VS.                                                      CIVIL ACTION NO. 3:02-CV-1553 HTW-LRA

UNIVERSITY OF MISSISSIPPI MEDICAL CENTER                                    DEFENDANT

### MEMORANDUM OPINION AND ORDER

Before this court is defendant's motion for summary judgment as to the claims of the plaintiff Eric Williams [**Docket No. 66**]. The defendant here is the University of Mississippi Medical Center ("Medical Center"), and the motion is brought pursuant to Rule 56(b)[1] of the Federal Rules of Civil Procedure.

### PERTINENT FACTS

Previously proceeding *pro se*, but now represented by counsel, plaintiff Williams, along with six other plaintiffs,[2] brought this lawsuit pursuant to Title VII of the Civil Rights Act of 1964, Section 703(a)(1), which deals with unlawful employment practices and provides in pertinent part that "(a) [i]t shall be an unlawful employment practice for an employer -- (1) [t]o fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions,

---

[1] Rule 56(b) provides that, "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."

[2] The six other plaintiffs who initially filed suit are: Lee Manning, Cleon Butler, Lester Caples, Reginal Smith, Donald Hubbard, and Diana Stewart. Lee Manning was dismissed by agreed order on May 27, 2003. The claims of the five remaining plaintiffs are the subject of the defendant's motion for summary judgment, and each plaintiff is addressed by a separate order of the court.

or privileges of employment, because of such individual's race, color, religion, sex, or national origin... ."  Title 42 U.S.C. § 2000e-2(a)(1).  Williams also asserts his claims pursuant to Title 42 U.S.C. § 1981[3].  Specifically, Williams accuses the defendant Medical Center of perpetrating racially discriminatory practices against him consisting of denial of promotion, unfair disciplinary actions, and termination of employment. Accused of providing false information in a complaint he circulated to the primary officers of the Medical Center concerning his perception of discriminatory personnel practices, Williams argues that the Medical Center's alleged reliance upon this supposed falsehood is but a subterfuge to discriminate against him for his outspokenness.

This court's jurisdiction over this dispute is provided by statute, § 706(f)(3) of Title VII which establishes federal court jurisdiction over actions brought under Title VII.  See 42 U.S.C. § 2000e-5(f)(3)[4].

---

[3] Title 42 U.S.C. § 1981 provides in pertinent part that, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

[4] Title 42 U.S.C. § 2000e-5(f)(3) provides that, "[e]ach United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter. Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office. For purposes of sections 1404 and 1406 of Title 28, the judicial district in which the respondent has his principal office shall in all cases be considered a district in which the action might have been brought."

## APPLICABLE LAW

### A. The Summary Judgment Standard

Summary judgment is appropriate where the facts and law as represented in the pleadings, affidavits and other summary judgment evidence show that no reasonable trier of fact could find for the nonmoving party as to any material fact. *Celotex Corporation v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Martinez v. Schlumberger, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). "A fact is 'material' if it 'might affect the outcome of the suit under governing law.'" *Bazan v. Hidalgo County,* 246 F.3d 481, 489 (5th Cir. 2001).

The nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. *See Celotex Corporation*, 477 U.S. at 322-23. All the evidence must be construed in the light most favorable to the non-moving party without weighing the evidence, assessing its probative value, or resolving any factual disputes. *Brown v. City of Houston*, 337 F.3d 539, 540 (5th Cir. 2003). The evidence is construed "in favor of the nonmoving party, however, only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999). Furthermore, only reasonable inferences can be drawn from the evidence in favor of the nonmoving party. *Eastman Kodak Company v. Image Technology Services, Inc.*, 504 U.S. 451, 469 n. 14, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). "If the [nonmoving party's] theory is ... senseless, no reasonable jury could find in its favor, and summary judgment should

be granted ." *Id.* at 468-69.  The nonmovant's burden is not satisfied by "some metaphysical doubt as to material facts," conclusory allegations, unsubstantiated assertions, speculation, the mere existence of some alleged factual dispute, or "only a scintilla of evidence."  *Anderson*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 540 (5th Cir. 2003).  Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to its case on which it bears the burden of proof at trial.  *Celotex Corporation*, 477 U.S. at 322.

### B.  Analysis of Williams' Title VII Claims

To survive summary judgment, a plaintiff must satisfy the burden-shifting test found in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). *Sabzevari v. Reliable Life Ins. Co.*, 264 Fed. Appx. 392, 394-395 (5th Cir. 2008). Under this test, a plaintiff must first establish a prima facie case of discrimination. *Id.* at 395. The burden then shifts to the defendant to set forth a legitimate, nondiscriminatory reason for its decision. *Id.* "The defendant's burden during this second step is satisfied by producing evidence, which, 'taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action.'" *Id.* (citation omitted). If the defendant produces a legitimate reason, any presumption of discrimination raised by the plaintiff's prima facie case vanishes. *Sabzevari*, 264 Fed. Appx. at 395  (citing *Septimus v. Univ. of Houston*, 399 F.3d 601,

609 (5th Cir. 2005)). The plaintiff may still avoid summary judgment, however, by demonstrating a genuine issue of material fact as to whether the legitimate reasons proffered by the defendant are a pretext for discrimination. *Id.*

### 1. Failure to Promote

Williams alleges that the Medical Center wrongfully denied him a promotion to the positions of Field Training Officer, Sergeant and Investigator. To establish a prima facie case of discrimination based on a failure to promote under Title VII, Williams must show that: (1) he belongs to a protected class; (2) he was qualified for the job he sought; (3) he suffered an adverse employment action; and (4) the position he sought was filled by someone outside his protected class. *Blow v. City of San Antonio, Texas*, 236 F.3d 293, 296 (5th Cir. 2001).

### a. The Position of Field Training Officer

The Medical Center argues that the position of Field Training Officer is a voluntary position which does not affect rank or compensation; therefore, Williams cannot bring a discriminatory failure to promote claim on the basis of not being selected for that position.

An adverse employment action, such as denial of promotion, is one that tends to result in a change in the employee's employment status, benefits or responsibilities. *McNealy v. Emerson Elec. Co.*, 306 F. Supp. 2d 613, 620 (M.D. 2004) (citing *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 407 (5th Cir. 1999)). The Fifth Circuit requires the adverse employment act to be an "ultimate employment decision." *McNealy*, 306 F. Supp. 2d at 620 (citing *Burger v. Central Apartment Management, Inc.*,

168 F.3d 875, 878 (5th Cir. 1999)). Ultimate employment decisions involve acts such as "hiring, granting leave, discharging, promotion, and compensating." *McNealy*, 306 F. Supp. 2d at 620 (citing *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707 (5th Cir. 1997)). "Refusing an employee's request for a purely lateral transfer does not qualify as an ultimate employment decision. Such a refusal is not akin to acts such as hiring, granting leave, discharging, promoting, and compensating." *Burger*, 168 F.3d at 879 (citing *Doe v. Dekalb County Sch. Dist.*, 145 F.3d 1441, 1450 (11th Cir. 1998). *See also McNealy*, 306 F. Supp. 2d at 620. "The change from a non-supervisory to a supervisory position does not suffice by itself to create a new employment relation." *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd.*, 40 F.3d 698, 714 (5th Cir. 1994) (quoting *Johnson v. Uncle Ben's, Inc.*, 965 F.2d 1363, 1371 (5th Cir. 1992), *cert. denied*, 128 L. Ed. 2d 362, 114 S. Ct. 1641 (1994)).

Williams argues that if promoted he would have attained supervisory status over other Medical Center officers as well as supervisory skills and experience. The plaintiff's arguments all relate to the change to supervisory status, and this court will follow the jurisprudence of the Fifth Circuit which has repeatedly declared this type of change insufficient for plaintiff to overcome summary judgment on a claim for failure to promote. Accordingly, Williams has failed to establish a prima facie case with regard to the position of Field Training Supervisor, and his claim for wrongful denial of promotion to Field Training Supervisor is dismissed.

### b. The Position of Sergeant

Next, with regard to the position of Sergeant, Williams applied for a Sergeant's position in July 2000, along with eleven other officers. At the conclusion of the interview process, the Medical Center promoted two persons to the position of Sergeant, one Caucasian-American, Thomas Hoffland, and one African-American, Dewayne Epps. The position filled with an African-American is not at issue because it was filled with someone inside plaintiff's protected class. *Blow*, 236 F.3d at 296. Therefore, Williams cannot establish a prima facie case as to that position.

As for the position filled with a Caucasian-American, this court finds that a prima facie case has been established and that the burden shifts to the Medical Center to provide a legitimate, nondiscriminatory reason for its decision not to promote Williams to the position of Sergeant. The Medical Center's Chief of Police Larry Iles contends by affidavit that the Medical Center hired Hoffland because it found him to be more qualified after considering all of the candidates' "basic police skills and written and oral communications, personnel history, and prior supervisory experience."

Selection of a more qualified applicant is a legitimate and nondiscriminatory reason for preferring one candidate over another. *Sabzevari,* 264 Fed. Appx. at 395 (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 251-253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)). For Williams to establish pretext in this way, he must raise a fact issue as to whether he was "clearly better qualified" and not merely "similarly qualified." *Sabzevari*, 264 Fed. Appx. at 395 (citing *Odom v. Frank*, 3 F.3d 839, 847 (5th Cir. 1993)). To show that he was "clearly better qualified" than Hoffland and raise a fact

7

question as to whether discrimination was a factor in the Medical Center's decision, Williams must present evidence from which a jury could conclude that "no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Moss v. BMC Software, Inc.*, 610 F.3d 917 (5th Cir. 2010) (quoting *Deines v. Texas Dep't of Protective & Regulatory Servs.*, 164 F.3d 277, 280-81 (5th Cir. 1999)).

Plaintiffs filed no response to the Medical Center's motion for summary judgment against Williams' claims. The Medical Center submits Williams' deposition in support of their legitimate, nondiscriminatory reason. Williams was asked during his deposition, "Do you allege that you were more qualified than both those officers that received the promotion?" Williams responded, "I wouldn't say more qualified, I think I was more qualified than Epps, the black male, and as far as Thomas Hoffman, the white male, I wasn't more qualified." Therefore, with the support of plaintiff's own admission, the Medical Center had a legitimate, nondiscriminatory reason in choosing Hoffland for the Sergeant position over Williams.

The Medical Center also argues that Williams' claim is barred for being untimely. Employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002). Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of a right to sue. *Dao v. Auchan Hyper-market*, 96 F.3d 787, 788-89 (5th Cir. 1996). Title VII requires that "[a] charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred... ." Title 42 U.S.C. § 2000e-5(e). "This limitations period begins to run from

the time that the complainant knows or reasonably should know that the challenged act has occurred." *McWilliams v. Escambia County School Board*, 658 F.2d 326, 328 (5th Cir. 1981).

Williams testified in his deposition that he filed a claim with the EEOC for denial of promotion to sergeant on August 7, 2000. He, however, has provided this court with neither a copy of the charge of discrimination he claims to have sent nor an associated right-to-sue letter or any other evidence suggesting the allegedly filed charge was indeed filed. The only charge of discrimination provided to this court is the one filed by the National Association for the Advancement of Colored People ("NAACP") on August 16, 2001, more than one year after August 7, 2000, the latest possible date Williams could claim he knew of the act he now challenges. Williams has submitted a right-to-sue letter issued to him in association with the NAACP charge of discrimination. Williams has failed to present any evidence to show that he timely filed a charge of discrimination with the EEOC. Thus, Williams' claim of denial to promotion for sergeant is dismissed for this reason as well.

### c. The Position of Investigator

Williams next claims he was not hired for the position of Investigator for which he applied on June 8, 2001. The opening for investigator was posted from May 22, 2001, until June 8, 2001. Larry Iles states in his affidavit that "[with] regard to the June 2001 Investigator position, Officer Williams was not considered because he was terminated for cause prior to the selection process." Williams was terminated on June 27, 2001, and the position was awarded in August 2001. A Caucasian-American was selected for the position. Assuming Williams was qualified for the position, which no one disputes, a

prima facie case has been established.  The burden shifts to the Medical Center to provide a legitimate, nondiscriminatory reason for not promoting Williams.

The Medical Center submits that it fired Williams as a result of his filing a fraudulent complaint to Medical Center administration.  The Medical Center states that after Williams filed his application for the Investigator position, Williams wrote a letter to Chancellor Robert Khayat and Vice Chancellor Wallace Conerly wherein he made allegations of unfair treatment in the Security Department.  Specifically, with regard to the Investigator position, Williams stated that "[n]ot one black officer on the second shift was aware of the job posting until the closing date."

First, this statement is untrue because Williams himself, who, according to the Medical Center, worked the second shift, was aware of the position because he applied for it. Secondly, says the Medical Center, Williams' statement was unfounded as to the other officers on the second shift.  When Williams was questioned during his deposition about the above quoted statement in his letter, he admitted that he did not know all of the officers on the second shift who were at work on June 8, 2001.  According to the Medical Center, two of the officers present whom Williams did not know, Leon Turner and Kelvin Gray, were black officers.

The Medical Center having presented a reason for terminating Williams and thus, not considering him for the promotion, the burden shifts back to Williams to show that the Medical Center's reason is a pretext for discrimination.  Williams makes no such argument or showing against the Medical Center's reason for not considering him for promotion to the position of Investigator.  Therefore, Williams has failed to meet his burden, and this claim, too, is dismissed.

## 2. Discharge

Williams' claim of discriminatory discharge may be viewed as a claim for retaliatory discharge. Williams alleges in his Complaint that "[a]s a result of his complaining about the unfair promotions process, he was suspended and then terminated." According to Williams, he was discharged in retaliation because he complained to Medical Center officials in the abovementioned letter about what he perceived to be discrimination.

An individual engages in protected activity under Title VII when the individual "has opposed any practice made an unlawful employment practice by Title VII. Title 42 U.S.C. § 2000e-3(a) provides in relevant part that it, "shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, ... because he has opposed any practice made an unlawful employment practice by this subchapter ... ." The *McDonnell Douglas* burden-shifting scheme applies to this claim. Williams must first demonstrate a prima facie case of discrimination; the Medical Center then must articulate a legitimate, non-discriminatory reason for its decision to terminate him; and if the Medical Center meets this burden of production, Williams must put forward sufficient evidence to create a genuine issue of material fact that either (1) the Medical Center's reason is pretext, or (2) even if the Medical Center's reason is true, it is only one reason for not renewing the contract, and Williams's race is another motivating factor for the Medical Center's conduct. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); *Garrett v. Judson Indep. Sch. Dist.*, 299 Fed. Appx. 337, 345 (5th Cir. 2008) (citing *Burrell v.*

*Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 411-12 (5th Cir. 2007); *Rachild v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)).

Three elements constitute a prima facie case of retaliation under Title VII: (1) the plaintiff engaged in an activity protected by Title VII (complained about or opposed perceived discrimination); (2) an adverse employment action occurred (plaintiff was discharged) ; and (3) a causal link existed between the protected activity and the adverse action. *Evans v. City of Houston*, 246 F.3d 344, 352 (5th Cir. 2001). Indeed, the plaintiff engaged in a protected activity, complaining about perceived discrimination in his letter, and he suffered an adverse employment action in that he was terminated. The fact that Williams sent the letter after June, 8, 2001, and was terminated on June 27, 2001, supports a sufficient inference of a causal link. *See Richard v. Cingular Wireless LLC*, 233 F. App'x 334, 338 (5th Cir. 2007) (two and a half months is a short enough period to support an inference of a causal link); *Ware v. CLECO Power LLC*, 90 F. App'x 705, 708 (5th Cir. 2004) (a fifteen-day lapse is sufficiently close to support an inference of causation).

Because Williams has made a prima facie showing on his retaliation claim, the burden shifts to the Medical Center to articulate a "legitimate, nondiscriminatory reason" for Williams' termination. As abovementioned, the Medical Center asserts that Williams was terminated due to his filing a fraudulent complaint to the Medical Center administration. The Medical Center submitted with its motion for summary: the letter with Williams' claim to Medical Center administration that no blacks on the second shift had the opportunity to apply for the position of Investigator; the list of applicants for the

Investigator position, which lists his name and proves that his claim was false; and the deposition testimony where Williams admits he does not even know all the African-Americans on the second shift and, thus, could not have known when he made the statement what knowledge each of them had about applying for the position. With this supporting evidence, this court is satisfied that the Medical Center has met its summary judgment burden.

Because the Medical Center has shown a legitimate, nondiscriminatory reason for Williams' termination, the only way Williams can survive summary judgment is if he shows either that (1) the Medical Center's explanation was false, or (2) the Medical Center's nondiscriminatory rationale, "although true, is but one of the reasons for its conduct, another of which was discrimination." *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 333 (5th Cir. 2005). Williams has offered neither an explanation nor specific evidence refuting the assertion that the Medical Center only terminated Williams for providing false information to the Medical Center. Williams has not placed any evidence in the record for summary judgment purposes, directed the court to any evidence already in the record or even submitted an argument in response to the Medical Center's offered legitimate, non-discriminatory reason. Williams has provided no evidence to suggest that the Medical Center's reason was false. On the contrary, his own testimony bolsters the validity of its reason.

This court, therefore, finds that no genuine issue of material fact has been raised as to Williams' discharge claim; thus, that claim is dismissed.

### 3. Disparate Treatment

Williams also complains that African-Americans are disciplined more harshly than are Caucasian-Americans, that African-Americans are required to take polygraph tests more often than are Caucasian-Americans when rule infractions occur, and that Caucasian-Americans receive more counseling and fewer reprimands.  The Medical Center has presented statistics to contradict Williams' assertions.  No evidence has been submitted by the plaintiff to support his allegation. Thus, there is no genuine issue of material fact as to plaintiff's claim of disparate treatment, and the claim is dismissed.

### **CONCLUSION**

In the instant case, this court finds that Williams has failed to establish that a genuine issue of material fact exists as to any of his claims; therefore, the motion of the Medical Center for summary judgment [**Docket No. 66**] is granted.  All of Williams' claims are fully and finally dismissed.

**SO ORDERED AND ADJUDGED** this the 19th day of July, 2011.

s/ **HENRY T. WINGATE**
**UNITED STATES DISTRICT JUDGE**

CIVIL ACTION NO. 3:02-CV-1553 HTW-LRA
Order Granting Summary Judgment