**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**

ERIC WILLIAMS, ET AL.                                                                    PLAINTIFFS

VS.                                                   CIVIL ACTION NO. 3:02-CV-1553 HTW-LRA

UNIVERSITY OF MISSISSIPPI MEDICAL CENTER                              DEFENDANT

## MEMORANDUM OPINION AND ORDER

Before this court is defendant's motion for summary judgment as to the claims of the plaintiff Lester Caples [**Docket No. 71**]. The defendant here, the University of Mississippi Medical Center ("Medical Center"), brings its motion pursuant to Rule 56[1] of the Federal Rules of Civil Procedure.

## PERTINENT FACTS

Previously proceeding *pro se*, but now represented by counsel, the plaintiff Caples, along with six other plaintiffs,[2] all African-American, submits this lawsuit under Title VII of the Civil Rights Act of 1964, Section 703(a)(1), which deals with unlawful employment practices and provides in pertinent part that "(a)[i]t shall be an unlawful employment practice for an employer -- (1) [t]o fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with

---

[1] Rule 56(a) states that "[a] party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

[2] The six other plaintiffs who initially filed suit are: Lee Manning, Eric Williams, Cleon Butler, Reginal Smith, Donald Hubbard, and Diana Stewart. Lee Manning was dismissed by agreed order on May 27, 2003. The claims of the five remaining plaintiffs are the subject of the defendant's motion for summary judgment, and each plaintiff is addressed by a separate order of the court.

respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin... ." Title 42 U.S.C. § 2000e-2(a)(1). Caples also asserts his claims under Title 42 U.S.C. § 1981.[3] Caples, a former Mississippi Medical Security Guard, accuses his employer-defendant, the Medical Center, of perpetrating racially discriminatory practices against him consisting of denial of promotion and retaliatory discharge.

This court's jurisdiction over this dispute is provided by statute. Section § 706(f)(3) of Title VII provides federal court jurisdiction over "actions brought under" Title VII. *See* Title 42 U.S.C. § 2000e-5(f)(3).[4]

---

[3]Title 42 U.S.C. § 1981 provides in pertinent part that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

[4]Title 42 U.S.C. § 2000e-5(f)(3) provides that "[e]ach United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter. Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office. For purposes of sections 1404 and 1406 of Title 28, the judicial district in which the respondent has his principal office shall in all cases be considered a district in which the action might have been brought."

## APPLICABLE LAW

### A. The Summary Judgment Standard

Summary judgment is appropriate where the facts and law as represented in the pleadings, affidavits and other summary judgment evidence show that no reasonable trier of fact could find for the nonmoving party as to any material fact. *Celotex Corporation v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986);  *Martinez v. Schlumberger, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003).  "A fact is 'material ' if it 'might affect the outcome of the suit under governing law." ' *Bazan v. Hidalgo County,* 246 F.3d 481, 489 (5th Cir. 2001).

The nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. *See Celotex Corporation*, 477 U.S. at 322-23.   All the evidence must be construed in the light most favorable to the non-moving party without weighing the evidence, assessing its probative value, or resolving any factual disputes.  *Brown v. City of Houston*, 337 F.3d 539, 540 (5th Cir. 2003).  The evidence is construed "in favor of the nonmoving party, however, only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts*."  Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999).  Furthermore, only reasonable inferences can be drawn from the evidence in favor of the nonmoving party.  *Eastman Kodak Company v. Image Technology Services, Inc.*, 504 U.S. 451, 469 n. 14, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). "If the [nonmoving party's] theory is ... senseless, no reasonable jury

3

could find in its favor, and summary judgment should be granted ." *Id*. at 468-69. The nonmovant's burden is not satisfied by "some metaphysical doubt as to material facts," conclusory allegations, unsubstantiated assertions, speculation, the mere existence of some alleged factual dispute, or "only a scintilla of evidence." *Anderson*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 540 (5th Cir. 2003). Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to its case on which it bears the burden of proof at trial. *Celotex Corporation*, 477 U.S. at 322.

## B. Analysis of Caples' Title VII Claims

### 1. The Matter of the Failure to Promote

In order to establish a prima facie case of discrimination based on failure to promote under Title VII, Caples must show that: (1) he belongs to a protected class; (2) he was qualified for the job he sought; (3) he was not promoted; and (4) the position he sought was filled by someone outside his protected class. *Blow v. City of San Antonio, Texas*, 236 F.3d 293, 296 (5th Cir. 2001). Moreover, in order to sustain his Title VII claim, Caples must show that the Medical Center hired a person outside of Caples' protected class with comparable or lesser qualifications. *Johnson v. Louisiana*, 351 F.3d 616, 621 n. 6 (5th Cir. 2003).

Caples contends that he was passed over for promotion to the positions of Lieutenant and Captain. Some of these allegedly lost promotional opportunities occurred in 1992, 1993 and 1995 under a prior police administration at the Medical Center, and Caples has raised no specific claim for these years. Still, referring to these "refusals to promote," Caples characterizes them as part of a pattern and practice of the Medical Center's racially discriminatory animus towards him. Caples says this court should consider these matters nevertheless.

Caples' claims for redress began in the year 2000. In that year, says Caples, he was passed over for promotion to Captain in March of 2000. The person selected was Clarence Hasberry, an African-American, the same race as Caples. Next, Caples says he was again passed over for promotion to Captain in January of 2003. The Medical Center once again chose an African-American, Anthony Hines, for the Captain's position. Finally, Caples says that he was not selected for the position of Captain in February of 2002, and that a Caucasian-American, Chris Skinner, was selected. The Medical Center points out that the person selected for this position had a Bachelor of Science degree from the University of Southern Mississippi, Hattiesburg, Mississippi, in criminal justice; had served with the Hinds County, Mississippi, Sheriff's Department for eighteen years; had served as a shift supervisor for nine years with the Sheriff's Department; had attained the rank of Lieutenant with the Sheriff's Department and served as the Assistant Patrol Division Commander prior to being hired by the Medical Center.

Caples also charges that he was passed over for the position of Lieutenant in May of 2000 and that a Caucasian-American, Bob Clower, was hired. Caples acknowledges that the person hired had been a Sergeant with the Medical Center police since 1995; had been a criminal investigator from 1984 to 1994; had a long history of law enforcement experience; and had served as the interim Sheriff of Copiah County, Mississippi, from March to November 1994.

The Medical Center argues that the Caucasian-Americans and the African-Americans hired for the positions of Lieutenant and Captain sought by Caples were better qualified candidates. As for the positions where an African-American was chosen, Caples cannot establish a prima facie case. To establish a prima facie case, Caples has to show that the position he sought was filled by someone outside his protected class. *Blow*, 236 F.3d at 296.

As for the positions where someone outside Caples' protected class was chosen, Caples must show that he was better qualified for the positions in order to create a genuine issue of material fact as to whether the Medical Center's proffered reasons for not promoting Caples were pretextual. *Price v. Federal Express Corporation*, 283 F.3d 715, 722 (5th Cir. 2002); *EEOC v. Louisiana Office of Community Services*, 47 F.3d 1438, 1444 (5th Cir. 1995). Caples does not quarrel with the qualification and experience claimed by these individuals. As for the position of Captain, for which a Caucasian-American, Chris Skinner was chosen, the Medical Center asserts in its memorandum in support of summary judgment that it chose Skinner because in addition to the abovementioned qualifications, "Officer Skinner,

6

unlike Office Caples, demonstrated acceptable verbal communication skills and demonstrated a knowledge and background in leadership and personnel management." With regard to the position of Lieutenant, for which Caucasian-American Bob Clower was hired, the Medical Center explains that "Clower, unlike Caples, demonstrated acceptable verbal communication skills and demonstrated a knowledge and background in leadership, personnel management, customer service, problem solving and strategic planning. In addition, Clower had considerable more law enforcement experience having worked as a criminal investigator for the Copiah County Sheriff's Department from 1984 to 1994 and command experience while serving as interim sheriff for Copiah County from March to November 1994." Caples in good conscience cannot contend that his career history clearly outshines those of his competitors.

In the instant case, then, Caples has not shown that he was better qualified than either of the Caucasian-Americans hired for the positions of Captain and Lieutenant.  Only evidence that Caples was better qualified will ensure the survival of his claims against a motion for summary judgment.  *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 357 (5th Cir. 2001).

This court is persuaded that Caples has presented no genuine issue of material fact to preclude this court from granting summary judgment to the Medical Center on Caples' claims of discriminatory promotion practices by the Medical Center.  Accordingly, this court hereby dismisses these claims.

## 2. The Matter of Discharge

To establish a prima facie case of retaliation, Caples must show "(1) that he engaged in activity protected by Title VII; (2) that he suffered an adverse employment action; and (3) that a causal connection exists between the protected activity and the adverse employment action." *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000); *Mattern v. Eastman Kodak Company*, 104 F.3d 702, 707 (5th Cir.), *cert. denied*, 522 U.S. 932, 118 S.Ct. 336, 139 L.Ed.2d 260 (1997). Caples contends that his discharge is related to his personal opposition to unlawful employment practices at the Medical Center.

Caples contends that he was fired in retaliation for having complained about discriminatory personnel practices at the Medical Center. The Medical Center responds that Caples was discharged for interfering with an investigation into the part-time employment activities of its police officers. According to the Medical Center, Caples, who was a target of the investigation, coaxed a witness to lie where the Medical Center was seeking to determine whether these officers had worn their Medical Center uniforms and equipment and carried their Medical Center issued weapons, on their part-time jobs.

The evidence surrounding the circumstances of Caples' discharge shows that he had obtained a part-time job providing night-time security at Hal & Mal's Restaurant in Jackson, Mississippi, and that he had enlisted the services of at least two other fellow officers in this endeavor. Caples became involved in an altercation while performing his part-time duties, an occurrence which triggered the aforesaid

8

investigation by the Medical Center concerning the officers' use of their Medical Center issued uniforms, equipment and weapons. Caples acknowledges that he told at least one officer under investigation, Greg McGuffee, not to reveal that he was carrying his issued weapon on the night in question. Once this became known to the Medical Center, Caples was discharged.

Caples believes that a causal connection exists between the protected activity he claims to have engaged in and his discharge, but a subjective belief alone is not sufficient to serve as the basis for judicial relief under Title VII. *Little v. Republic Refining Company*, 924 F.2d 93, 96 (5th Cir. 1991); *Sherrod v. Sears, Roebuck & Company*, 785 F.2d 1312, 1316 (5th Cir. 1986); *Hornsby v. Conoco, Inc.*, 777 F.2d 243, 246 (5th Cir.1985); *Elliott v. Group Medical & Surgical Services*, 714 F.2d 556, 567 (5th Cir. 1983), *cert. denied*, 467 U.S. 1215, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984).

Caples says he is traveling on more than a subjective belief. Prior to his termination, Caples asserts that he had been complaining to the defendant about what he perceived to be unfair and discriminatory employment practices at UMMC. Defendants were not pleased, says Caples.

Continuing his argument of retaliation, Caples recites the following in his brief:

> The incident prompting the investigation occurred on the night of March 2, 2002, at Hal-Mal restaurant. Plaintiff's security company had been contracted to provide security for the occasion. Plaintiff had hired two other individuals who also were UMMC police officers to work during the event. During the function, an incident occurred involving a patron of Hal-Mal's, who happened to be a dental student at UMMC. The individual, who was Caucasian, was behaving in a disruptive manner and using profanity and had to be escorted from the premises by

Plaintiff Lester Caples. The white student, angered by the incident involving Caples, who is African-American, complained to UMMC's administration that Plaintiff had unjustly removed him from the Hal-Mal premises.

Arty Girod, the Director of the UMMC Campus Police Department, who is also Caucasian, then complained to Barbara Smith about Lester Caples' conduct without having any prior discussion with Lester Caples regarding the incident. Smith brought Caples in to question him regarding the complaint and, in an apparent effort to discover whether some wrong had been committed by Caples, she also began interrogating Caples as to whether he was using UMMC issued equipment and his UMMC service pistol during his non-UMMC related employment. After denying Smith's allegation regarding use of his service pistol and affirming that he had used a UMMC belt clip, Caples was allowed to leave with no further direction or communication from Smith. Subsequently, Lester Caples was called back into another meeting with Smith and told that he was being suspended pending his submission to a polygraph examination and the results thereof. The suspension was alleged to be based upon the fact that a white UMMC officer, who had worked the Hal-Mal's event with Lester Caples' security company, complained to Smith that Lester Caples had instructed him to lie if anyone asked him about whether he was wearing UMMC issued equipment during the security operation at Hal-Mal. The plaintiff was never given an opportunity to challenge the false complaint by the white officer. Lester Caples submitted to the polygraph examination and passed it. A true and correct copy of the Polygraph Examination is attached hereto as Exhibit L. The polygraph results showed that Lester Caples was telling the truth when responding that he did not tell anyone to lie concerning the investigation into the Hal-Mal incident and that he had not used his UMMC issued service revolver at the event. Despite the result of the polygraph examination, Lester Caples was terminated.

Further over in his brief, Caples emphasizes:

The treatment of Lester Caples is in stark contrast to the manner in which similarly situated Caucasians are treated. For example, Officer Greg McGuffee was polygraphed during the same investigation and he was not terminated from UMMC's police department. In fact, McGuffee still works for the police department.

Caples was asked, "Did you advise anyone to lie concerning this

investigation?" He answered, "no." The polygraph examiner stated in his April 9,

2002, polygraph examination report that "[t]he result of [Caples'] exam was that no sufficient deceptive response was recorded on the relevant questions asked. The examiner stated in his report related to McGuffee's examination that "[McGuffee] was asked if Sergeant Caples told him to lie concerning the weapon he was using. [McGuffee] stated that Caples suggested he say he was using a .38 caliber gun at the function, which Greg refused to do." McGuffee was asked one question regarding Caples during his polygraph examination, which was, "Did Sergeant Caples tell you how to respond to questions about the ASB functions?" McGuffee answered, "yes."

This argument on facts persuades this court that a genuine issue of fact exists here, namely whether the Medical Center actually believed Caples had attempted to frustrate the investigation. An employer is shielded from liability under Title VII even where its actions were erroneous, but taken in good faith, *Ramirez v. Landry's Seafood Inn & Oyster Bar*, 280 F.3d 576, 579 n.4 (5th Cir. 2002)[5], but the question here is whether the Medical Center acted in good faith in view of its past conduct in crediting successful passage of polygraphs.

## CONCLUSION

In the instant case, this court finds that Caples' claims relating to the Medical Center's failure to promote him have not met the standards required to support a Title VII claim. The court is persuaded otherwise on Caples' claim of retaliatory

---

[5]In *Ramirez*, the Fifth Circuit noted that a termination decision is not pretextual if the employer had reasonable grounds for the decision or in good faith thought it did. *Ramirez, 280* F.3d at 579 n.4.

discharge and hereby sets that matter for trial. Therefore, the motion of the Medical Center for summary judgment [**Docket No. 71**] is granted in part and denied in part.

**SO ORDERED AND ADJUDGED** this the 19th day of July, 2011.

s/ **HENRY T. WINGATE**
**UNITED STATES DISTRICT JUDGE**


Civil Action No. 3:02-CV-1553 HTW-LRA
Order Granting Summary Judgment in Part and Denying it in Part