IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

ERIC WILLIAMS, ET AL.                                                            PLAINTIFFS

VS.                                                   CIVIL ACTION NO. 3:02-CV-1553 HTW-LRA

UNIVERSITY OF MISSISSIPPI MEDICAL CENTER                              DEFENDANT

### MEMORANDUM OPINION AND ORDER

Before this court is defendant's motion for summary judgment as to the claims of the plaintiff Donald Hubbard [**Docket No. 63**]. The defendant here is the University of Mississippi Medical Center ("Medical Center"), and the motion is brought pursuant to Rule 56[1] of the Federal Rules of Civil Procedure.

### PERTINENT FACTS

Previously proceeding *pro se*, but now represented by counsel, plaintiff Hubbard, along with six other plaintiffs,[2] brought this lawsuit pursuant to Title VII of the Civil Rights Act of 1964, Section 703(a)(1), which deals with unlawful employment practices and provides in pertinent part that "(a) [i]t shall be an unlawful employment practice for an employer -- (1) [t]o fail or refuse to hire or to discharge any individual,

---

[1] Rule 56(a) states that "[a] party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

[2] The six other plaintiffs who initially filed suit are: Lee Manning, Eric Williams, Lester Caples, Reginal Smith, Cleon Butler, and Diana Stewart. Lee Manning was dismissed by agreed order on May 27, 2003. The claims of the five remaining plaintiffs are the subject of the defendant's motion for summary judgment, and each plaintiff is addressed by a separate order of the court.

or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin... ." Title 42 U.S.C. § 2000e-2(a)(1). Hubbard also asserts his claims pursuant to Title 42 U.S.C. § 1981.[3] Finally, Hubbard raises the claim of retaliation pursuant to Title 42 U.S.C. § 2000e- 3(a) which prohibits retaliation against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter."

Hubbard testified in his deposition taken on August 3, 2004, that after he had filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), in July 2001, he attended a mediation with the EEOC and UMC on that charge and signed a settlement agreement on January 30, 2002, between himself as Charging Party and the Medical Center as Respondent. Pursuant to the terms of this Settlement Agreement, the Medical Center agreed that "Respondent will consider Charging Party, along with all other qualified applicants, for future promotional opportunities for which he applies and is qualified to fill." In exchange for this promise, Hubbard agreed, "not to institute a lawsuit against Respondent under Title VII of the Civil Rights Act of 1964, as amended, or any other statute enforced by the EEOC based on EEOC Charge Number 131-A1-1304."

---

[3]Title 42 U.S.C. § 1981 provides in pertinent part that, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Notwithstanding the Settlement Agreement entered into between Hubbard and the Medical Center, Hubbard joined the six other *pro se* plaintiffs in filing the instant lawsuit on October 2, 2002. These plaintiffs subsequently obtained counsel and filed the amended complaint now before the court.

The Medical Center filed its motion for summary judgment contending that Hubbard should be bound by his Settlement Agreement. This court agrees that summary judgment is the appropriate action to take for the reasons which follow.

## APPLICABLE LAW

### A. Jurisdiction

This court's jurisdiction over this dispute is provided by statute, § 706(f)(3) of Title VII which establishes federal court jurisdiction over "actions brought under" Title VII. See 42 U.S.C. § 2000e-5(f)(3).[4]

### B. The Summary Judgment Standard

Summary judgment is appropriate where the facts and law as represented in the pleadings, affidavits and other summary judgment evidence show that no reasonable trier of fact could find for the nonmoving party as to any material fact. *Celotex Corporation v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. 2548, 91 L.Ed.2d 265

---

[4]Title 42 U.S.C. § 2000e-5(f)(3) provides that, "[e]ach United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter. Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office. For purposes of sections 1404 and 1406 of Title 28, the judicial district in which the respondent has his principal office shall in all cases be considered a district in which the action might have been brought."

(1986); *Martinez v. Schlumberger, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). "A fact is 'material' if it 'might affect the outcome of the suit under governing law.'" *Bazan v. Hidalgo County,* 246 F.3d 481, 489 (5th Cir. 2001).

The nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. *See Celotex Corporation*, 477 U.S. at 322-23. All the evidence must be construed in the light most favorable to the non-moving party without weighing the evidence, assessing its probative value, or resolving any factual disputes. *Brown v. City of Houston*, 337 F.3d 539, 540 (5th Cir. 2003). The evidence is construed "in favor of the nonmoving party, however, only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.*" Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999). Furthermore, only reasonable inferences can be drawn from the evidence in favor of the nonmoving party. *Eastman Kodak Company v. Image Technology Services, Inc.*, 504 U.S. 451, 469 n. 14, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). "If the [nonmoving party's] theory is ... senseless, no reasonable jury could find in its favor, and summary judgment should be granted." *Id*. at 468-69. The nonmovant's burden is not satisfied by "some metaphysical doubt as to material facts," conclusory allegations, unsubstantiated assertions, speculation, the mere existence of some alleged factual dispute, or "only a scintilla of evidence." *Anderson*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a

4

motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 540 (5th Cir. 2003). Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to its case on which it bears the burden of proof at trial. *Celotex Corporation*, 477 U.S. at 322.

### C. Federal Common Law Governs EEOC Settlement Agreements

The defendant argues in its motion for summary judgment that Hubbard is barred from bringing this suit by the January 30, 2002, Settlement Agreement he entered into with the Medical Center. This court must determine two questions extensively argued and briefed by the parties: (1) which law governs this issue and (2) whether the Settlement Agreement bars plaintiff's claims in this matter.

Title VII settlement agreements are contracts, but they are inextricably linked to Title VII. Federal common law governs the enforcement and interpretation of such agreements because the "rights of the litigants and the operative legal policies derive from a federal source." *Fulgence v. J. Ray McDermott & Company*, 662 F.2d 1207, 1209 (5th Cir. 1981). The concept of federal common law has its origin in the case of *Clearfield Trust Company v. United States*, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943), the United States Supreme Court case noting that an appropriate federal rule of decision occasionally must be borrowed from state law. The Fifth Circuit holds that "[b]asic considerations of federalism . . . prompt us to begin with the premise that state law should supply the federal rule unless there is an expression of legislative intent to the contrary, or, failing that, a showing that state law conflicts significantly with any federal interests or policies present in this case." *Central Pines Land Company v.*

*United States*, 274 F.3d 881, 890 (5th Cir. 2001), citing *Georgia Power Company v. Sanders*, 617 F.2d 1112, 1115-16 (5th Cir. 1980).

In the instant case, Title VII offers no legislative intent to avoid the application of federal common law. The application of federal common law to EEOC settlement agreements presents no state law conflicts with federal interests. *See Fulgence v. J. Ray McDermott & Company*, 662 F.2d at 1209.

### D. Hubbard's Settlement Agreement

An established principle under federal common law is that one who agrees to settle his claim cannot subsequently seek both the benefit of the settlement and the opportunity to continue to press the claim he agreed to settle. *Kirby v. Dole*, 736 F.2d 661, 664 (5th Cir. 1984) (citing *Strozier v. General Motors Corporation*, 635 F.2d 424 (5th Cir. 1981) (*per curiam*) and *United States v. Allegheny-Ludlum Industries, Inc.*, 517 F.2d 826 (5th Cir.1975), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976)). In *Strozier* the plaintiff filed suit under Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. §§ 2000e-2000e-17, and Title 42 U.S.C. § 1981, claiming that his employer took certain allegedly discriminatory action against him. *Strozier*, 635 F.2d at 425. The district court granted the employer's motion for summary judgment on the ground that the plaintiff had previously settled his discrimination claims. *Id.* The Fifth Circuit affirmed, rejecting the proposition that " 'an aggrieved employee who freely settles his or her unliquidated demand with the employer ... may reciprocate by suing the same defendant at a later date on the same cause of action, merely

because the employee grows dissatisfied with the payment for which he or she settled.'" *Id.* at 426.

The instant case presents the same problem for Hubbard that the Court faced in *Strozier*. Plaintiff Hubbard has settled his retaliation claim, yet he still wishes to continue to press in a subsequent lawsuit those claims he raised and settled in his original EEOC complaint. The problem presented is that the retaliation claim arises under Title VII, a claim which has been waived by agreement.

Courts uphold the validity, and indeed encourage the use, of settlement and release as a means of resolving employment disputes. *See Jackson v. Widnall*, 99 F.3d 710, 714 (5th Cir. 1996). Such agreements are binding on both parties. *Id.*, 99 F.3d at 714; 29 C.F.R. § 1614.504(a) (any settlement agreement knowingly and voluntarily agreed to by the parties, reached at any stage of the complaint process, shall be binding on both parties). On January 30, 2002, Hubbard signed the Settlement Agreement discharging the Medical Center from any claims arising out of the alleged promotion discrimination and the matter of his termination. Thus, the burden is on Hubbard to show that the Settlement Agreement he signed was invalid. *Williams v. Phillips Petroleum Company*, 23 F.3d 930, 935 (5th Cir. 1994) ("Once a party establishes that his opponent signed a release that addresses the claims at issue, received adequate consideration, and breached the release, the opponent has the burden of demonstrating that the release was invalid . . . ").

Hubbard argues that the agreement lacked consideration. The Medical Center promised to "consider [Hubbard], along with all other qualified applicants, for future promotional opportunities for which he applies and is qualified to fill." Hubbard argues

7

that this is not consideration. The Medical Center merely stated that it would do those things that federal law already requires it to do. Therefore, Hubbard argues, he received no benefit from the Medical Center's promise, and the Medical Center gave up nothing to its detriment.

The mere exchange of promises is ordinarily sufficient to satisfy the requirement of consideration. *Johnson v. Seacor Marine Corp.*, 404 F.3d 871, 875 (5th Cir. 2005). Thus, even if a contract does not require any performance that would not have been done in the absence of the contract, as long as the contracting parties gain some legally enforceable right as a result of the contract which they previously did not have, consideration is present. *Id.* The Medical Center promised to consider him for all future positions for which he qualified and applied. It is entirely appropriate under Title VII for an employer to undergo subjective analysis of the varying traits of each applicant, such as employment history. *See Blise v. Antaramian*, 409 F.3d 861, 868 (7th Cir. 2005). *See also Denney v. City of Albany*, 247 F.3d 1172, 1186 (11th Cir. 2001) ("It is inconceivable that Congress intended anti-discrimination statutes to deprive an employer of the ability to rely on important criteria in its employment decisions merely because those criteria are only capable of subjective evaluation."). The Medical Center demoted Hubbard as a result of reprimands for deficient work performance. He had a right to not be excluded from promotion on the basis of his protected status, but he had no right to be considered for future promotions. Accordingly, the Medical Center's promise to consider him for future promotions constituted sufficient consideration for the Settlement Agreement.

The parties have directed this court to no evidence contrary to a finding that Hubbard's consent to the Settlement Agreement was knowing and voluntary, and thus, the Settlement Agreement was valid. *See Alexander v. Gardner-Denver Company*, 415 U.S. 36, 52 n. 15, 94 S.Ct. 1011, 1021 n. 15, 39 L.Ed.2d 147 (1974). The parties do not dispute that the Settlement Agreement bears Hubbard's signature. Hubbard's signature establishes that he read the Settlement Agreement, agreed to its terms, and has waived any argument that he did not read the documents. *Nicolas v. Deposit Guaranty National Bank*, 182 F.R.D. 226 (S.D. Miss.1998). Subject to public policy embedded in federal or state law, "[a] court is obligated to enforce a contract executed by legally competent parties where the terms of the contract are clear and unambiguous." *Merchants & Farmers Bank v. State of Mississippi*, 651 So.2d 1060 (Miss. 1995). In such cases, "the contract must be interpreted according to its terms" or "construed exactly as written." *Foreman v. Continental Casualty Co.*, 770 F.2d 487, 489 (5th Cir. 1985).

Therefore, as previously noted, pursuant to the terms of the Settlement Agreement, the Medical Center agreed not to retaliate against Hubbard for filing his EEOC charge and to consider him for future promotion. Hubbard agreed to not sue the Medical Center for retaliation for demoting him after he filed his complaints over perceived discrimination in the work place. The agreement is clear and must be enforced according to its terms. Any claim Hubbard may have possessed under Title VII pertaining to his termination from the Medical Center is now waived.

**CONCLUSION**

Pursuant to the January 30, 2002, Settlement Agreement Hubbard entered into with the Medical Center, the claims he raises in this matter have been waived. Thus, Hubbard's claims against the Medical Center are hereby fully and finally dismissed, and the motion for summary judgment [**Docket No. 63**] is granted.

**SO ORDERED AND ADJUDGED** this the 19th day of July, 2011.

**s/ HENRY T. WINGATE**
**UNITED STATES DISTRICT JUDGE**

CIVIL ACTION NO. 3:02-CV-1553 HTW-LRA
Order Granting Summary Judgment